**Jose Contreras MUNOZ, Appellant,**

v.

**Paul M. KELLEY, Officer in Charge, United States Department of Immigration and Naturalization, Appellee.**

No. 14075.

United States Court of Appeals
Ninth Circuit.

Oct. 27, 1955.

Morgan & Waag, W. Edward Morgan, Tucson, Ariz., Robert E. McGhee, Globe, Ariz., for appellant.

Jack D. H. Hays, U. S. Atty., Robert O. Roylston, Mary Anne Reimann, Asst. U. S. Attys., Tucson, Ariz., for appellee.

Before STEPHENS and FEE, Circuit Judges, and TAYLOR, District Judge.

JAMES ALGER FEE, Circuit Judge.

Jose Contreras Munoz was admitted to the United States as an immigrant for permanent residence in 1915. He is an alien, a native and citizen of Mexico.

A warrant of arrest was issued for petitioner on October 9, 1951. The charge is that Munoz was subject to deportation in "That he has been, after entry, a member of the following class, set forth in Section (1) of the Act of October 16, 1918, as amended; an alien who was a member of the Communist Party of the United States." At a hearing on February 13, 1952, Munoz was present in person and by counsel. Testimony was taken, and on March 12, 1952, the hearing officer decided that petitioner had been a voluntary member of the Communist Party of the United States and was subject to deportation.[1] The Board of Immigration Appeals dismissed an appeal taken from the denial of a motion to reopen. Munoz filed a petition for a writ of habeas corpus in the United States District Court for the District of Arizona, which, after hearing, refused to grant the writ and dismissed the petition. The Court found that there was reasonable, substantial and probative evidence to the effect that Munoz was a member of the Communist Party and that there were no procedural irregularities in the hearing accorded by the immigration authorities, but, on the other hand, that the hearing was fair and fairly conducted. The only evidence available on the issue of membership in the Communist Party before

---

[1]. Section 1(3) of the Act of October 16, 1918, as amended by the Internal Security Act of 1950, Public Law 831; 8 U.S.C. 137; Sections 19 and 20 of the Act of February 5, 1917; 8 U.S.C. 155; 8 U.S.C.A. § 137–3(A), now Immigration and Nationality Act, § 212(a) (29), 8 U.S.C.A. § 1182(a) (29).

the immigration authorities was the testimony of the alien himself. There Munoz admitted that he was active in union work and in that connection was given a Communist Party membership card. He testified that he did not consider himself a member of the group, stating that he did not sign the membership card. However, the card was not produced, and Munoz stated that he "thinks" he burned it. He admitted attending two Communist Party meetings in 1944, the first of which was called by Henry Holt, the president of the union local and, as found by the Board of Immigration Appeals, an active member of the Communist Party in Clifton, Arizona. Munoz testified that this meeting was mainly concerned with the discrimination question, although the works of Earl Browder were discussed and excerpts were read from pamphlets of the party. The second meeting which he attended was held in Phoenix in the same year. Munoz testified he had gone there with Henry Holt and Juan Aguilera, secretary of the union local. Munoz was to be a union witness in a jurisdictional dispute hearing. Holt thereafter invited Munoz to a social gathering in a book shop, where refreshments were served. Aguilera and Munoz, according to the latter, left the meeting before the party "big shot" and speaker arrived. He admitted that he bought one book at the book store meeting place, and this book was the Constitution of the Communist Party. He also admitted he had been given Communist Party literature, including information on discrimination and the works of Earl Browder. He "thinks" he also burned this. In addition, Munoz admitted taking a year's subscription to the "People's World Weekly." He testified that he was ignorant of the aims of the party while he was a member, although he realized that Browder was a prominent Communist. His chief justification for his connection with the Communist Party and persons found by the Board of Immigration Appeals to be known Communists such as Holt and Morris Graham was the fact that he wanted to learn how to combat anti-Mexican discrimination, which he said was then prevalent in local employment circles. The Board of Immigration Appeals, in reviewing the evidence, summarizes further testimony as follows:

"Respondent denied that he ever paid regular dues to the Communist Party. He testified that six months after he received a Party card, Gilbert Arrieta came to collect six months' dues in arrears at 50 cents per month; that Arrieta agreed to compromise the amount of back dues for 10 cents per month or 60 cents, which respondent paid. * * * More recently, respondent testified that he failed to pay even this latter amount, but offered to give Arrieta money for 'some beer.'

"While respondent alleged that he did not consider himself a Communist Party member (since he allegedly had not signed his card), he testified that he quit after six months as a result of the above episode. * * * The fact that respondent stated: 'I told them (the Party) that I didn't want anything to do with the Party. I feel that I am free from the Communist Party Association' * * * tends to contradict his contention of non-membership. In addition, when respondent was asked: 'When did you actually withdraw from the Communist Party Association?' he replied: 'The only record that I know of is that I quit six months after I got the card.' * * * The use of the word 'record' is significant and convinces us that respondent has been somewhat less than candid in his testimony about his Communist Party membership, perhaps as a result of a conscious effort to conceal any connection which respondent may actually have had with the Party in Arizona."

██ The parties are in agreement that the only question here is whether or not the appellant was substantially a member of the Communist Party within the definition of the terms of the statute

involved. Petitioner seem to contend there was not sufficient evidence to support the findings. These were based upon admissions of Munoz himself. The claim is, however, that there were qualifications placed upon these admissions in his sworn testimony. Particularly, it is pointed out, Munoz testified he never considered himself a member because he had not himself signed his membership card. The hearing officer clearly found that these statements in explanation were not convincing or persuasive. Second, Munoz argues that his membership was for employment purposes only, and was thus only nominal membership as defined in the Act of March 28, 1951. Finally, the petitioner contends that his membership in the Communist Party was not voluntary or intentional since he swore he did not understand the aims and operations of the Communist Party because he was badly informed and was not an active member of the group. The résumé of the testimony of the alien given above indicates that the hearing officer based his rulings upon ample evidence as to the voluntariness of petitioner's membership in the Communist Party. These admissions were made directly in the hearing, and therefore there is no question as to admissibility.

It must be remembered that this Court has no responsibility as to the determination of the facts. We affirm the District Court in its conclusion that there was reasonable, substantial and probative evidence to support the order and warrant of deportation. This alien was neither accidentally nor artificially nor unconsciously nor in appearance only a member of the Communist Party. His purchase of the Constitution of the Communist Party, his subscription to the "People's World Weekly" and his acquaintance with the works of Earl Browder show that he had knowledge of the aims thereof. It is, of course, obvious that there was no intention to authorize deportation of aliens who by chance and without appreciation became members of the party. Such a defense might be urged by one who was an illiterate or who was not of sufficient mentality to appreciate the aims of the party. But Munoz is a high school graduate and has been employed in a mine continuously since 1937. He was very active in union affairs until 1947, and in two years was chosen by his local as "Grievance Committeeman and as a member of the Negotiating Committee" representing the union. He appeared for the local at hearings before committees. However severe the consequences of his membership, it is clear that he fell within the purpose of the statute. As was noted above, knowledge upon his part of the advocacy of the party was demonstrated by a support of the party with that knowledge. The record makes it clear that Munoz joined the party of his own free will, and at the time he was well aware that he was joining an organization which is distinctly and actively political.[2]

Although the petitioner does not raise the point,[3] we have examined the record and find that there were no procedural irregularities which tended to render the hearing unfair. Thus the inquiry is at an end.

Affirmed.

---

2. See Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911.

3. In the brief for Munoz, it is suggested that "since the filing of appellant's designation of points of error on appeal * * * Galvan v. Press * * * has apparently answered many of the Constitutional objections which appellant wished to raise in this Court."